## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

BRENDA GEIGER, CLAUDIA SAMPEDRO, DESSIE MITCHESON, and URSULA MAYES

     Plaintiffs,

v.

RA, INC. D/B/A 52EIGHTY SPORTS BAR AND NIGHT CLUB; and DOES 1-10

     Defendants.

---

### PLAINTIFFS' COMPLAINT AND JURY DEMAND

---

COME NOW Plaintiffs BRENDA GEIGER, CLAUDIA SAMPEDRO, DESSIE MITCHESON, and URSULA MAYES (collectively, "Plaintiffs" or "Models"), by and through undersigned counsel, and for Complaint against Defendants RA, INC. D/B/A 52EIGHTY SPORTS BAR AND NIGHT CLUB; and DOES 1-10 ("Defendants" or "52eighty") respectfully allege as follows:

### BACKGROUND

1.     The following is an action for damages and injunctive relief relating to Defendants' misappropriation and unauthorized publication of the image and likeness of Plaintiff Models, who are professional models, in order to promote its sports bar and night club, 52eighty Sports Bar and Night Club ("52eighty" or, the "Defendants").

2.     As detailed below, Defendants' unauthorized use of Plaintiff Models' images, photos, and likenesses (collectively, "Image") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of Colorado common law, which protects a person's right to privacy and publicity; c) defamation, and; d) supplants various common law torts.

1

3.      Defendants have pirated the images, likeness, and/or identity of each Plaintiff Model for purely self-serving commercial purposes – to advertise, promote, and market Defendants' own business interests on websites and social media accounts owned, operated, hosted, or controlled by Defendants.

4.      Defendants are an unapologetic, chronic, and habitual infringers.

5.      Defendants never sought consent or authority to use any of the Plaintiffs' images for any purpose.

6.      No Plaintiff ever agreed, nor would any Plaintiff have agreed, to Defendants' use of her image, likeness, and/or identity.

7.      Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use of any image, each Plaintiff would have promptly and unequivocally declined.

8.      Defendants' conduct is therefore misleading and deceptive by falsely and fraudulently representing that each Plaintiff Model depicted in the misappropriated images is somehow affiliated with Defendants; has contracted to perform at and/or participate in events at 52eighty; has been hired to promote, advertise, market or endorse its events and other activities offered at 52eighty; and/or that each Plaintiff depicted in the promotional materials and social media and/or Internet posts has attended or will attend each event and has participated in or intends to participate in the activities advertised.

9.      Defendants' conduct is also injurious to each Plaintiff Model.

10.     Defendants circumvented the typical arms-length negotiation process entirely and intentionally pirated the images. In doing so, Defendants have utterly deprived each Plaintiff the right and ability to say "no."

11.     Defendants have prevented each Plaintiff from engaging in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely. In short, Defendants deprived each Plaintiff the ability to protect her image, brand, and reputation.

12.     In the end, Defendants gained an economic windfall by using the images of professional and successful models for Defendants' own commercial purposes, luring and enticing patrons worldwide to view the images and visit 52eighty, without having to compensate the models for such usage.  Plaintiffs, however, sustained injury to their images, brands, and marketability by shear affiliation with 52eighty, a night club operated by Defendants.

13.     Having operated a business in the night club industry, Defendants are well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

14.     Much more than merely a misuse in connection with an innocuous brand or event, Defendants embarrassed Plaintiffs by associating their images with 52eighty.

15.     In addition to the actual, punitive, and exemplary damages set forth below, Plaintiff Models likewise seek an Order from this Court permanently enjoining Defendants from using the images, likeness, and/or identity of each Plaintiff Model to promote 52eighty, via any medium.

## JURISDICTION AND VENUE

16.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1)(A)(B).  This Court has supplemental jurisdiction over the Colorado state law claims alleged herein pursuant to 28 U.S.C. § 1367.

17.     The Court has personal jurisdiction over Defendants based on its contact with the State of Colorado, including but not limited to Defendants' registration to conduct business in Colorado, its physical location and principal place of business in Colorado, and upon information and belief, committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Colorado.

18.     According to publicly available records, Defendants RA, INC. D/B/A 52EIGHTY SPORTS BAR AND NIGHT CLUB; and DOES 1-10 is a corporation organized and existing pursuant to the laws of the State of Colorado doing business as a night club under the

name "52eighty" in Denver, Colorado.

19.    Venue is proper in the United States District Court for the District of Colorado because Denver County is the principal place of business for Defendants. Venue is also proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in the District of Colorado.

20.    All parties have minimum contacts with Denver County, a significant portion of the alleged causes of action arose and accrued in Denver County, Colorado, and the center of gravity for a significant portion of all relevant events alleged in this Complaint is predominately located in Denver County.

<b><u>PARTIES</u></b>

**A.    <u>Plaintiffs</u>**

21.    Given the multitude of violations harming the Plaintiff models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations presently known into this single collective action (with distinct claims per each model) on behalf of the following models.

22.    Plaintiff BRENDA GEIGER ("Geiger") is, and at all times relevant to this action was, a professional model and resident of Onondaga County, New York.

23.    Plaintiff CLAUDIA SAMPEDRO ("Sampedro") is, and at all times relevant to this action was, a professional model and a resident of Miami-Dade County, Florida.

24.    Plaintiff DESSIE MITCHESON ("Mitcheson") is, and at all times relevant to this action was, a professional model and a resident of Orange County, California.

25.    Plaintiff URSULA MAYES ("Mayes") is, and at all times relevant to this action was, a professional model and a resident of Orange County, California.

**B.    <u>Defendants</u>**

26.    According to publicly available records, Defendants RA, INC. D/B/A 52EIGHTY SPORTS BAR AND NIGHT CLUB; and DOES 1-10, is a corporation organized under the laws

of the State of Colorado, and owns and operates a sports bar and night club under the name 52eighty Sports Bar and Night Club located at 7575 Broadway, Denver, Colorado 80221.

27.     52eighty holds, and at all times relevant has held, itself out as an operator of a night club that engages in the business of entertaining its patrons with alcohol, food service, sports entertainment, and music.

28.     52eighty owns and/or operates a website, https://52eighty-sports-bar-and-night-club.business.site/, and other social media accounts: Facebook https://www.facebook.com/52eighty-Sports-Bar-and-Night-Club and Instagram https://www.instagram.com/52eighty-sports-bar-and-night-club/ through which they advertise their business, events, and parties. For many of these events, images of one or more of the models were used to market and promote the events.

29.     Upon information and belief, 52eighty coordinated their promotional, Internet, and social media activities through active and dynamic use of their Facebook and Instagram accounts and website.

30.     Plaintiffs are unaware of the true names and capacities of Defendants named herein as unidentified DOES 1 through 10 (hereinafter referred to as "DOES"); and, therefore, sue such DOES by said fictitious names.  Plaintiffs will seek leave of this Court to amend this Complaint when the true names of DOES 1 through 10 are ascertained. Plaintiffs are informed and believe and on such information and belief allege that each of the DOES named by such a fictitious name is in some manner responsible for the acts and omissions as alleged herein; and, therefore, DOES are liable to Plaintiffs for the damages alleged herein.

31.     For purposes of this Complaint and for reasons set forth within this Complaint, hereinafter, all of the above-identified Defendants may be collectively referred to as "Defendants".

## FACTUAL ALLEGATIONS

**A.**     **Standard and Customary Business Practices in the Modeling Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Images**

32.     As set forth immediately below, Plaintiff Models were extremely well-known professional models who earned a livelihood modeling and selling images to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services.

33.     Plaintiff Models' careers in the modeling industry placed a high degree of value on good will and reputation, which was critical in order to maximize earning potential, book modeling contracts, and establish individual brands.  In furtherance of establishing, and maintaining their brands, Plaintiff Models were necessarily selective concerning the companies, and brands, for which they chose to model.

34.     Being vigilant and proactive about protecting one's reputation is therefore of paramount importance.

35.     Plaintiff Models are professional models who earn a living by promoting their image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on reputation and brand for modeling, acting, hosting, and other opportunities.

36.     Plaintiff Models careers in the modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing an individual brand, being selected for modeling contracts, and maximizing earnings.

37.     Each Plaintiff Model has worked to establish herself as reliable, reputable, and professional.

38.     Each Plaintiff Model must necessarily be vigilant in protecting her "brand" from harm, taint, or other diminution.  In furtherance of establishing, and maintaining her brands, each Plaintiff Model was necessarily selective concerning the companies and brands for which she chose to model.

39.     Any improper or unauthorized use of an image, likeness, or identity could substantially injure the career and career opportunities of each Plaintiff Model.

40.     In the modeling industry, models such as the Plaintiffs typically do not have a single employer, but rather work on an independent contractor basis for different agents or entities.  Each Plaintiff Model is a responsible professional in the ordinary course.  Each Plaintiff Model seeks to control the use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

41.     A model's vetting and selection of a professional engagement involves a multi-tiered assessment, requiring the model to:

    a.   determine whether the individual or entity seeking a license and release of a model's image, likeness, or identity is reputable, has reputable products or services, and, through affiliation, would enhance or harm a model's stature or reputation;

    b.   use this reputational information in negotiating compensation which typically turns on the work a model is hired to do, the time involved, travel, and how her image is going to be used (among other variables);

    c.   protect her reputation and livelihood by carefully and expressly defining the terms and conditions of use; and

    d.   reduce and memorialize the negotiated deal into an integrated, written agreement which defines the parties' relationship.  Endorsing, promoting, advertising, or marketing the "wrong" product, service, or corporate venture, or working in or being affiliated with a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities.  Conversely, association with high-end companies, products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

42.     For these reasons, *even if* a model chose to jeopardize her career for a compromising engagement – such as appearing in an advertisement for a night club – the fee she would charge would necessarily far exceed the fee typically charged for more mainstream and reputable work.

**B.**    **Defendants Have Misappropriated Each Plaintiff's Image, Likeness and/or Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to any Plaintiff**

43.    RA, INC. D/B/A 52EIGHTY SPORTS BAR AND NIGHT CLUB; and DOES 1-10 operates a Colorado-based Sports Bar and Night Club under the name 52eighty where it engages in the business of selling alcohol and food in an atmosphere with sports entertainment, and music.

44.     52eighty does this for its own commercial and financial benefit.

45.    As set forth below, each Plaintiff Model's image, likeness, and/or identity has been misappropriated by or at the direction of Defendants.  Defendants' conduct creates the false and misleading appearance and impression that each Plaintiff either works for Defendants, has appeared and participated, or will appear and participate in activities or events at 52eighty, and/or has agreed and consented to advertise, promote, market, or endorse 52eighty or 52eighty events or activities.

46.    Plaintiff Models have personal and proprietary interest in their right to privacy and publicity arising out of their persona and likeness contained within their images. Plaintiff Models' interest is separate and apart from any copyright claim that may or may not exist to the photographs that encompass Plaintiff Models' images. Plaintiff Models' persona, in the form of their likeness, is not copyrightable and their rights of publicity are independent of any copyright. *See e.g. Downing v. Abercrombie Fitch*, 265 F. 3d 994, 1005 (9th Cir. 2001).

47.    To the extent any copyright (or some other "right" for that matter) may exist for photograph depicting Plaintiff Models' images, Plaintiff Models allege that Defendants have totally and completely destroyed any such copyright by morphing, editing, or otherwise altering the original photographs.

48.    The manner in which Defendants used Plaintiff Models' images suggests to the public that Plaintiff Models are promoting or otherwise endorsing Defendants' establishment with the goal of increasing 52eighty visibility, driving clientele to attend the advertised events, and to otherwise increase revenue and drive profits.

49.    52eighty has used, advertised, created, printed, and distributed the image of Plaintiff, as further described and identified above, to create the false impression with potential clientele that Plaintiff Models either worked at or endorsed 52eighty. 52eighty continued to republish these images. To this day, Plaintiffs' images are published and re-published by Defendant on its social media and web pages.  When people view these social media posts and "like" the Images, for instance, the Images are re-published to a substantially new audience each time.  Each instance is a new publication of the Images and, therefore, another new use of Plaintiffs' Images and fall outside the scope of the One Publication Rule.

50.    52eighty used Plaintiff Models' image, and created the false impression that they worked at or endorsed 52eighty in order to receive certain benefits, including but not limited to: monetary payments; increased promotional opportunities, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

51.    As 52eighty was at all times aware, at no point have Plaintiff Models ever been affiliated with or employed by 52eighty, and at no point have Plaintiff Models ever endorsed 52eighty.

52.    All of 52eighty activities, including its misappropriation of Plaintiff Models' images, and publication of them, were done without the knowledge or consent of Plaintiff Models, and 52eighty did not compensate Plaintiff Models for its use of their images. As such, Plaintiff Models have never received any benefit for 52eighty use of their images.  Defendants used Plaintiff Models' images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiff Models of their right to determine the use their images.

53.    52eighty voluntarily undertook an affirmative course of action by choosing to advertise with imagery of women on the internet and social media in order to benefit its night club. As such, 52eighty had a duty to exercise reasonable care that Plaintiffs' person or property would not be injured.  52eighty is subject to liability to Plaintiffs for the harm resulting from its failure to exercise reasonable care.  52eighty's failure to exercise reasonable care increased the risk of such

harm to Plaintiffs.

54.      52eighty assumed a duty by choosing to use the images of Plaintiffs, or any person for that matter, for commercial purposes and it was charged with exercising that duty in accordance with the proper standard of care.  It also had a duty of care when it ultimately used and republished the images.

55.      Defendant failed to promulgate policies and procedures concerning the unauthorized use of imagery on its websites and social media accounts in addition to failing to properly train, hire, screen, retain, or supervise its employees. These failures were not a one-time occurrence contemporaneous with the publication of each image; rather, this was a course of conduct that occurred over several years allowing these images to be posted and remain posted and to be republished and continues to this day.

56.      Plaintiffs continue to suffer a ongoing injury to them due to 52eighty's continued misappropriation of their images.  52eighty's conduct of reposting the same or altered images of Plaintiffs may be viewed an a ongoing tort.

57.      Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiff Models.

58.      Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

59.      By using the Plaintiffs' image and likeness, Defendants did not use their own advertising idea, and instead used the Plaintiffs' (or their licensees') advertising ideas to promote their club to the public.

### *Plaintiff Brenda Geiger*

60.      Brenda Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in *Glamour Magazine* and her appearance on "The

Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as *Show, Maxim and Raw,* and has modeled for several product campaigns such as Primitive Clothing, where she has her own line of custom skateboard decks.

61.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Geiger negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

62.     Geiger's image, likeness, and/or identity are depicted in at least three photographs, enclosed as **Exhibit A** to the Complaint, which were posted on social media on at least twelve occasions (and have remained publicly posted since the initial posting, constituting a continuous and ongoing harm) to create the false perception that Geiger has consented or agreed to promote, advertise, market, and/or endorse 52eighty. Specifically, on or about December 22, 2018, Geiger's image was uploaded to 52eighty's Facebook page with intent to promote and market 52eighty nightclub. The Image of Geiger was used to advertise 52eighty's "Seductive Bingo" event. On or about November 23, 2018, Geiger's image (the red head model posed in the center) was uploaded to 52eighty's Facebook page with intent to promote and market 52eighty. The Image of Geiger was used to advertise 52eighty's "Erotic Bingo" event. That same image of Geiger was used multiple times on 52 Eighty's Facebook page. Lastly, on or about February 26, 2019 , Geiger's image was uploaded to 52eighty's Facebook page with intent to promote and market 52eighty. The Image of Geiger was used to advertise 52eighty's "Erotic Bingo" event.  The use of the images falsely implied that Geiger represents 52eighty and that she authorized 52eighty to use her image for promotional and marketing purposes. The images were used without the consent of Geiger and were manipulated to intentionally give the impression that Geiger is a spokesperson for 52eighty, working at 52eighty, and/or that she endorses 52eighty.

63.     Geiger's image, likeness, and/or identity in **Exhibit A** is being used as advertising, and on social media.

64.     Defendants' unauthorized use of Geiger's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the

manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants used Geiger's image and likeness, they did so unlawfully, without authorization, and consent, and Geiger suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

65.     Geiger has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, 52eighty or any 52eighty event.

66.     Defendants never sought permission or authority to use Geiger's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, 52eighty, or any 52eighty event.

67.     Geiger never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, 52eighty, or any 52eighty event.

68.     Defendants neither offered nor paid any remuneration to Geiger for the unauthorized use of her image, likeness, or identity.

69.     Defendants' use of Geiger's image, likeness, and/or identity in connection with 52eighty impugns Geiger's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

70.     Defendants' improper use of Geiger's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Moreland's image in their market activities and business. In doing so, Defendants have further damaged Geiger.

### Plaintiff Claudia Sampedro

71.     Claudia Sampedro is a Cuban born model, mother and spokeswoman. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Sampedro has appeared in many catalogues, magazine editorials and has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro

is married to and has a child with former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with 1.1 million followers on Instagram, over 32 thousand Facebook followers, and over 158.1 thousand followers on Twitter. [1].

72.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Sampedro negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

73.     Sampedro's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit B** to the Complaint, which were posted on social media on at least three occasions (and have remained publicly posted since those initial posting, constituting a continuous and ongoing harm) to create the false perception that Sampedro has consented or agreed to promote, advertise, market, and/or endorse 52eighty. Specifically, on January 4, 2018, Sampedro's image was uploaded to 52eighty's Facebook page with intent to promote and market 52eighty. The Image os Sampedro was used to advertise 52eighty's "Ladies Night" and the Facebook caption beside the image of Sampedro advertised "Ladies come down you drink free 9-11" and "$2 shot specials." The same Image of Sampedro was used again on January 25, 2018, to advertise "Ladies Night" again.  Lastly, on June 13, 2018, Sampedro's image was uploaded to 52eighty's Facebook page with intent to promote and market 52eighty's "FRIDAY NIIGHT DANCE PARTY". The use of the images falsely implied that Sampedro represents 52eighty and that she authorized 52eighty to use her image for promotional and marketing purposes. The images were used without the consent of Sampedro and were manipulated to intentionally give the impression that Sampedro is a spokesperson for 52eighty, working at 52eighty, and/or that she endorses 52eighty.

74.     Sampedro's image, likeness, and/or identity in **Exhibit B** is being used as advertising, and on social media.

75.     Defendants' unauthorized use of Sampedro's image and likeness was continuous

---

[1]     In the world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model.

and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Instagram account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants used Sampedro's image and likeness, they did so unlawfully, without authorization, and consent, and Sampedro suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

76.     Sampedro has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, 52eighty or any 52eighty event.

77.     Defendants never sought permission or authority to use Sampedro's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, 52eighty, or any 52eighty event.

78.     Sampedro never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, 52eighty, or any 52eighty event.

79.     Defendants neither offered nor paid any remuneration to Sampedro for the unauthorized use of her image, likeness, or identity.

80.     Defendants' use of Sampedro's image, likeness, and/or identity in connection with 52eighty impugns Sampedro's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

81.     Defendants' improper use of Sampedro's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Sampedro's image in their market activities and business. In doing so, Defendants have further damaged Sampedro.

### Plaintiff Dessie Mitcheson

82.     Dessie Mitcheson is a model who competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of *Playboy* Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. Mitcheson was crowned *Maxim*

magazine's "Hometown Hottie". Later that year, Mitcheson was #100 on *Maxim's* "Hot 100" list. She has graced the pages of multiple issues of *Maxim*, including a three-page spread, two centerfolds, and the cover for the May 2014 *Navy* issue. Mitcheson was featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v. Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson currently has almost 400 thousand Instagram followers, over 53 thousand Facebook followers, and 13.3 thousand Twitter followers.

83.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Mitcheson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

84.     Mitcheson's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit C** to the Complaint, which was posted on social media on at least two occasions (and has remained publicly posted since those initial posting, constituting a continuous and ongoing harm) to create the false perception that Mitcheson has consented or agreed to promote, advertise, market, and/or endorse 52eighty. Specifically, on or about October 21, 2017, Mitcheson's image (the redhead dressed up in the devil costume) was uploaded to 52eighty's Facebook page with intent to promote and market 52eighty. The Image of Mitcheson was used to promote 52eighty's "HALLOWEEN PARTY" event, and the Facebook caption beside the image of Mitcheson advertised "Next Saturday come join us at 52eighty for our Halloween costume party." The use of the image falsely implied that Mitcheson represents 52eighty and that she authorized 52eighty to use her image for promotional and marketing purposes. The image was used without the consent of Mitcheson and was manipulated to intentionally give the impression that Mitcheson is a spokesperson for 52eighty, working at 52eighty, and/or that she endorses 52eighty.

85.     Mitcheson's image, likeness, and/or identity in **Exhibit C** is being used as advertising, and on social media.

86.     Defendants' unauthorized use of Mitcheson's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook and Instagram accounts could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants used Mitcheson's image and likeness, they did so unlawfully, without authorization, and consent, and Mitcheson suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

87.     Mitcheson has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, 52eighty or any 52eighty event.

88.     Defendants never sought permission or authority to use Mitcheson's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, 52eighty, or any 52eighty event.

89.     Mitcheson never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, 52eighty, or any 52eighty event.

90.     Defendants neither offered nor paid any remuneration to Mitcheson for the unauthorized use of her image, likeness, or identity.

91.     Defendants' use of Mitcheson's image, likeness, and/or identity in connection with 52eighty impugns Mitcheson's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

92.     Defendants' improper use of Mitcheson's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Mitcheson's image in their market activities and business. In doing so, Defendants have further damaged Mitcheson.

### *Plaintiff Ursula Mayes*

93.     Ursula Mayes started her modeling career when her photos won first place in prestigious photography awards leading to a spread in *Maxim* magazine. She is well known as a

"suitcase model #5" from the hit game show Deal or No Deal. *Mayes* has appeared on Minute To Win It, The Tonight Show, and The Jay Leno Show. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, *Vogue, Elle, In Style, Cosmopolitan*, and *Marie Claire*, to name a few. Mayes was a cover model and a star of the game Juiced 2: Hot Import Nights. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency.

94.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Mayes negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

95.     Mayes image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit D** to the Complaint, which was posted on 52eighty's Facebook page on at least one occasion (and has remained publicly posted since those initial posting, constituting a continuous and ongoing harm) to create the false perception that Mayes has consented or agreed to promote, advertise, market, and/or endorse 52eighty. Specifically, on or about December 3, 2018, Pinder's image (brunette model posed with a Santa hat) was uploaded to 52eighty's Facebook page with intent to promote and market 52eighty's "RED AND WHITE SEXY XMAS PARTY."   The use of the image falsely implied that Mayes represents 52eighty and that she authorized 52eighty to use her image for promotional and marketing purposes. The image was used without the consent of Mayes and was manipulated to intentionally give the impression that Mayes is a spokesperson for 52eighty, working at 52eighty, and/or that she endorses 52eighty.

96.     Mayes' image, likeness, and/or identity in **Exhibit D** is being used as advertising, and on social media.

97.     Defendants' unauthorized use of Mayes' image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook page could view, access, and even download the image from the

date it was first posted until present. During the entire timeframe that Defendants used Mayes' image and likeness, they did so unlawfully, without authorization, and consent, and Mayes suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

98.    Mayes has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, 52eighty or any 52eighty event.

99.    Defendants never sought permission or authority to use Mayes' image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, 52eighty, or any 52eighty event.

100.    Mayes never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, 52eighty, or any 52eighty event.

101.    Defendants neither offered nor paid any remuneration to Mayes for the unauthorized use of her image, likeness, or identity.

102.    Defendants' use of Mayes' image, likeness, and/or identity in connection with 52eighty impugns Mayes' character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

103.    Defendants' improper use of Mayes' image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Mayes' image in their market activities and business. In doing so, Defendants have further damaged Mayes.

## CAUSES OF ACTION

### PLAINTIFFS' COUNT I
**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**
**(Plaintiffs Geiger, Sampedro, Mitcheson and Mayes v. Defendant)**

104.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

105.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party

in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

106.   Defendants used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with 52eighty, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use their image in order to advertise, promote, and market Defendants' businesses, 52eighty, and/or 52eighty events and activities.

107.   Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendants' businesses, 52eighty, and/or 52eighty's events and activities as described in this Complaint was false and misleading.

108.   Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with 52eighty, endorsed Defendants' businesses, 52eighty or 52eighty's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or 52eighty's events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

109.   Defendants' false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of 52eighty, as to the general quality of attendees and participants of 52eighty and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with 52eighty, endorsed Defendants' businesses, 52eighty or 52eighty's events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or 52eighty's events and activities.

110.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise

affiliated with 52eighty, endorsed Defendants' businesses,  or 52eighty's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or 52eighty's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join 52eighty, visit 52eighty, and participate in events at 52eighty and had a material effect and impact on the decision of members and prospective members and participants to join 52eighty, visit 52eighty and take part in the events at 52eighty.

111.    Defendants' advertisements, promotions and marketing of 52eighty and events at 52eighty occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at 52eighty's events.

112.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting 52eighty and their activities and attracting clientele to 52eighty.

113.    Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

114.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

115.    Defendants' wrongful conduct as described herein was willful.

116.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

117.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

118.    The method and manner in which Defendants used the image of Plaintiffs further

evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their image to advertise Defendants' businesses.

119.   Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the Sports Bar and Night Club lifestyle and activities at 52eighty.

120.   Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs respectfully request that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### PLAINTIFFS' COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**
**(Plaintiffs Geiger, Sampedro, Mitcheson and Mayes v. Defendant)**

121.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

122.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein

123.   Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' night club, or endorsed Defendants' businesses. This was done to promote and attract clientele to 52eighty, and thereby generate revenue for Defendants.

124.   Thus, this was done in furtherance of Defendants' commercial benefit.

125.   Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through

secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

126.    Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

127.    As such, an unauthorized use of Plaintiffs' image to promote a night club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

128.    Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that 52eighty advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

129.    Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their night club, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with 52eighty.

130.    Defendants knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at 52eighty.

131.    Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

132.   As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

133.   Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

134.   Due to 52eighty's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**PLAINTIFFS' COUNT III**
**State Common Law Misappropriation of Likenesses**
**Violation of Right to Privacy; Right of Publicity**
**(Plaintiffs Geiger, Sampedro, Mitcheson and Mayes v. Defendant)**

135.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

136.   Plaintiffs hold the exclusive right to control the public dissemination of their names and likenesses for commercial use.

137.   Defendants may not, and owe a duty not to, publish, print, display, or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, photograph, or other likeness of the Plaintiffs without their express consent to such use.

138.   The Plaintiffs never consented to, permitted, assigned, licensed, or otherwise

agreed to Defendants' use of their images, likenesses, or identities to advertise, promote, market, or endorse the Defendants' business or activities, or for any other commercial or other purpose;

139. Nevertheless, Defendants published, printed, displayed, and/or publicly used the Plaintiffs' images, likenesses, and identities on their social media sites for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising, and marketing 52eighty and its events and activities, and to lure customers and drive traffic to 52eighty.

140. Defendants used Plaintiffs' images, likenesses, and/or identities as described herein intentionally, without authority and to its commercial benefit in order to, *inter alia*, create the false perception that the Plaintiffs worked at, would appear at, or were otherwise affiliated with 52eighty, endorsed 52eighty or 52eighty's business activities, and/or consented to or authorized Defendants' usage of their images, likenesses, and/or identities in order to advertise, promote and market 52eighty's business activities.

141. Defendants' use of the Plaintiffs' images, likenesses and/or identities to advertise, promote, and market Defendants' business, events, and activities as described in this Complaint was false, misleading, and a misrepresentation of fact.

142. The Plaintiffs' readily identifiable bodies and faces are shown in the well-lighted images used by Defendants.

143. Defendants misappropriated Plaintiffs' images and likenesses without notice or knowledge to the Plaintiffs and without even attempting to acquire Plaintiffs' permission.

144. Plaintiffs did not give Defendants permission to use their images or likenesses.

145. Defendants' unauthorized appropriation and continuous use of the Plaintiffs' images, likenesses, and/or identities, as described herein, violated Plaintiffs' common law rights of privacy and specifically, their right to publicity.

146. The Defendants acted intentionally or recklessly by selecting Plaintiffs' images and, knowing they did not have permission to use the images for commercial gain, by posting the images on Defendants' social media sites in an effort to market the Defendants' night club business and its events and activities.

147. Defendants are in the entertainment business, and knew or should have known of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

148. Nevertheless, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of a photoshoot, payments to Plaintiffs' agents or agencies, and the costs of licensing, totaling a substantial sum of money and resulting in damage to the Plaintiffs and a windfall to the Defendants.

149. Defendants have caused and will continue to cause irreparable harm and damage to the Plaintiffs, their reputations, and their brands, by falsely attributing to the Plaintiffs their involvement with or endorsement of 52eighty night club and Plaintiffs' association with events and activities relating thereto.

150. Defendants have damaged Plaintiffs as a direct, foreseeable, and proximate result of their unauthorized use of Plaintiffs' images, likenesses, and/or identities without compensating Plaintiffs, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their images and likenesses, and damages for reputational harm, in amounts to be established by proof at trial.

151. As a further direct and proximate result of Defendants' conduct as alleged herein, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

152. As further direct and proximate result of Defendants' conduct as alleged in here, Plaintiffs have experienced mental and emotional anguish and suffering

## PLAINTIFFS' COUNT IV
### (Negligence and *Respondeat Superior*)
### (Plaintiffs Geiger, Sampedro, Mitcheson and Mayes v. Defendant)

153.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

154.   Plaintiffs are further informed and believe and herein allege that Defendants maintain or *should have maintained* employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual use* of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

155.   Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

156.   Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

157.   Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

158.   Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

159.   Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Colorado law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

160.   Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without their consent, authorization and done so in a false, misleading, and/or deceptive manner.

161.   As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### DEMAND FOR JURY TRIAL

162.   Plaintiffs demand a trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally, in an amount to be determined at trial aggregated across all Plaintiffs and as follows:

1.      For damages as provided in 15 U.S.C. § 1125(a);

2.      For attorneys' fees and costs of suit, as provided for in 15 U.S.C. § 1125(a);

3.      For an order permanently enjoining Defendants from using Plaintiff's Images to promote the Club;

4.      For actual damages according to proof;

5.      For general damages according to proof;

6.      For special damages according to proof;

7.      For consequential damages according to proof;

8.      For reasonable attorneys' fees and costs as permitted by law;

9.      For prejudgment interest and royalties at the legal rate;

6.      For such other relief as this Court deems just and proper; and

7.      For punitive damages, in an amount to be determined at trial.

Dated: May 18 2021                              Respectfully Submitted,

                                                **THE CASAS LAW FIRM, P.C.**
                                                By: _/s/ Joseph N. Casas_

Illinois Bar No. 6274674
California Bar No. 225800
11844 Bandera Road Suite 500
Helotes, Texas 78023
Email: joseph@talentrights.law

John V. Golaszewski, Esq.
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th Floor
New York, New York 10019
P: 855-267-4457
E-mail: john@talentrights.law

Dennis C. Postiglione, Esq.
**THE CASAS LAW FIRM, P.C.**
3801 North Capital of Texas Highway
Suite E240, #445
Austin, Texas 78746
P: 855-267-4457
E-mail: dennis@talentrights.law
*Attorneys for Plaintiffs*